**Nos. 23-15049, 23-15050, 23-15051**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| THERESA SWEET, ET AL., | : | On Appeal from the |
| Plaintiffs-Appellees, | : | United States District Court |
| & | : | for the Northern District of |
| | : | California |
| EVERGLADES COLLEGE, INC., ET | : | |
| AL., | : | District Court Case No. |
| Intervenors-Appellants, | : | 3:19-cv-3674 |
| v. | : | |
| MIGUEL CARDONA, ET AL., | : | |
| Defendants-Appellants. | : | |

---

## BRIEF OF *AMICI CURIAE* OHIO AND 21 OTHER STATES SUPPORTING REHEARING EN BANC

---

DAVE YOST
Ohio Attorney General

T. ELLIOT GAISER
Ohio Solicitor General
JANA M. BOSCH
MATHURA J. SRIDHARAN*
Deputy Solicitors General
 *Counsel of Record*
30 E. Broad St., 17th Fl.
Columbus, Ohio 43215
614-466-8980
mathura.sridharan@ohioago.gov

*Counsel for Amicus Curiae*
 *State of Ohio*

*Additional counsel listed alongside signature block*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF AMICI INTEREST AND SUMMARY OF ARGUMENT .... 1

STATEMENT OF FACTS ................................................................. 1

ARGUMENT ................................................................................. 3

    I.     The intervenor schools properly objected to the illegal settlement. .......... 3

    II.    The settlement agreement and its approval by the judiciary harm the separation of powers. ................................................................. 5

        A.    The settlement agreement gives legislative power to the executive. ... 6

        B.    The District Court's approval of the settlement agreement and panel's acquiescence further violate the separation of powers ........... 10

CONCLUSION .............................................................................. 13

ADDITIONAL COUNSEL ............................................................... 14

CERTIFICATE OF COMPLIANCE FOR BRIEFS ........................... 15

CERTIFICATE OF SERVICE .......................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Allen v. Wright,*
    468 U.S. 737 (1984) ...................................................................... 11

*Biden v. Nebraska,*
    600 U.S. 477 (2023) ..................................................................... 1, 5

*Career Colleges & Sch. of Texas v. United States Dep't of Educ.,*
    98 F.4th 220 (5th Cir. 2024) ......................................................... 5

*Chrysler Corp. v. Brown,*
    441 U.S. 281 (1979) ........................................................................ 8

*City of Los Angeles v. Cnty. of Kern,*
    581 F.3d 841 (9th Cir. 2009) ...................................................... 11

*Clinton v. City of New York,*
    524 U.S. 417 (1998) ........................................................................ 8

*E. Bay Sanctuary Covenant v. Biden,*
    102 F.4th 996 (9th Cir. 2024) ...................................................... 9

*Exec. Bus. Media, Inc. v. U.S. Dep't of Def.,*
    3 F.3d 759 (4th Cir. 1993) ........................................................ 8, 9

*Fikre v. FBI,*
    35 F.4th 762 (9th Cir. 2022) ........................................................ 5

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010) ........................................................................ 6

*Hamdan v. Rumsfeld,*
    548 U.S. 557 (2006) ........................................................................ 7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014) ...................................................................... 11

*Louis v. U.S. Dep't of Lab.,*
    419 F.3d 970 (9th Cir. 2005) ........................................................ 8

*Marbury v. Madison*,
   1 Cranch 137 (1803) ........................................................................ 12

*MCI Telecomms. Corp. v. FCC*,
   57 F.3d 1136 (D.C. Cir. 1995) ......................................................... 8

*In re MCP No. 165*,
   20 F.4th 264 (6th Cir. 2021) ............................................................ 5

*Medellin v. Texas*,
   552 U.S. 491 (2008) ......................................................................... 7

*Merck Sharp & Dohme Corp. v. Albrecht*,
   587 U.S. 299 (2019) ......................................................................... 8

*Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*,
   501 U.S. 252 (1991) ......................................................................... 6

*Morrison v. Olson*,
   487 U.S. 654 (1988) ......................................................................... 9

*NFIB v. Dep't of Lab., OSHA*,
   595 U.S. 109 (2022) ......................................................................... 7

*Perez v. Mortg. Bankers Ass'n*,
   575 U.S. 92 (2015) ......................................................................... 10

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ....................................................................... 11

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ....................................................... 11

*Sierra Club v. Trump*,
   929 F.3d 670 (9th Cir. 2019) ........................................................... 6

*Sweet v. Cardona*,
   121 F.4th 32 (9th Cir. 2024) ................................................. 1, 2, 3, 4

*United States v. Carpenter*,
   526 F.3d 1237 (9th Cir. 2008) ......................................................... 5

*United States v. Texas*,
  599 U.S. 670 (2023) ...................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................... 5

*Warth v. Seldin*,
  422 U.S. 490 (1975) ...................................................................... 11

*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) ......................................................... 11

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ...................................................................... 7

**Statutes, Rules, and Constitutional Provisions**

U.S. Const. Art. I, §1 ....................................................................... 7

U.S. Const. Art. II, §1 ...................................................................... 6

34 C.F.R. §685.206 ..................................................................... 3, 4

34 C.F.R. §685.308 .......................................................................... 4

20 U.S.C. §1082 ............................................................................... 5

20 U.S.C. §1087 ............................................................................... 4

Fed. R. Civ. Pro. 23 ......................................................................... 5

**Other Authorities**

Antonin Scalia, "In Praise of the Humdrum" in *The Essential Scalia: On the Constitution, the Courts, and the Rule of Law* (Sutton & Whelan, eds., 2020) .................................................................. 6

Brett M. Kavanaugh, *Our Anchor for 225 Years and Counting: The Enduring Significance of the Precise Text of the Constitution*, 89 Notre Dame L. Rev. 1907 (2014) ............................................................ 7

The Federalist No. 78 (Alexander Hamilton) (Scott, Foresman & Co. ed., 1898) ................................................................................. 10

iv

John F. Manning, *Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules*, 96 Colum. L. Rev. 612 (1996) ..................8

## STATEMENT OF AMICI INTEREST AND SUMMARY OF ARGUMENT

In its ruling denying standing to the intervenor schools, the panel opinion side-stepped an important question about the settlement agreement the Secretary of Education wants to use to forgive debt en masse: whether it is legal. But more than that, the panel damaged the separation of powers by condoning an Executive Branch power grab. When the Judicial Branch most needed to step up in its role as arbiter of the law, the panel opinion instead facilitated a separation-of-powers violation. The full Court should grant rehearing en banc.

## STATEMENT OF FACTS

This appeal challenges a settlement by the Secretary of Education. In the settlement, the Secretary agrees to a mass student-debt cancellation that he never had the power to accomplish by ordinary action within his statutory powers. *See Sweet v. Cardona*, 121 F.4th 32, 40 (9th Cir. 2024); *Biden v. Nebraska*, 600 U.S. 477, 506 (2023). Four schools that are maligned in the settlement sought to intervene, and the District Court granted permissive intervention. *Sweet*, 121 F.4th at 40. The schools objected to the settlement. Among other things, they pointed out that the settlement violated the Federal Rules of Civil Procedure, Opp., R.324 at 8–14, 19–24 (Oct. 6, 2022), overstepped the Department of Education's statutory authority, *id.* at 14–17, and raised the specter of collusion, Opp., R.325 at 24–25 (Oct. 6, 2022).

The District Court rejected their objections and approved the settlement. *Sweet*, 121 F.4th at 40–41.

The schools appealed the rejection of their objections, but the Department and Plaintiffs opposed, claiming that the schools had no standing. *Id.* at 41. The panel acknowledged that the schools had Article III standing. *Id.* at 42–43. But it found that the schools did not have "prudential standing" to challenge the settlement because they suffered no "formal legal prejudice." *Id.* at 44–47. That meant, the panel held, that it could not review the settlement or the schools' objections. *Id.*

Judge Collins dissented. The dissent explained that, if an entity is properly a permissive intervenor, it does not need additional "formal legal prejudice" to appeal rejection of their objections to the settlement. *Id.* at 49–50 (Collins, J., dissenting). Holding otherwise "effectively require[s] the putative intervenor to establish that it qualifies for intervention *as of right*." *Id.* at 52. On the merits, the dissent noted that the Department "lacks the necessary statutory authority to grant the relief contained in the settlement." *Id.* at 54. It also wrote that the settlement violated Federal Rule of Civil Procedure 23 by granting monetary relief to an injunctive-relief class. *Id.* at 55.

The schools now seek en banc review.

2

# ARGUMENT

This Court should grant en banc review for two reasons. First, the intervenor schools properly objected to the illegal settlement. Second, the settlement and the judiciary's approval of it undermine the constitutional separation of powers.

## I.     The intervenor schools properly objected to the illegal settlement.

The schools rightfully intervened and objected to the settlement. To begin, the intervenor schools have Article III standing. *Sweet*, 121 F.4th at 41–43. They also have grounds to intervene. Order, R.322 (Aug. 31, 2022). To nevertheless avoid the merits, the panel adopted novel standards for prudential standing. *See* En Banc Pet. at 7–13. Those standards inject confusion into a doctrine that normally and appropriately permits intervenors—including the States—to promote their interests in important litigation.

Next, the intervenors' objections were correct. The borrower-defense program permits those with direct federal education loans to obtain loan forgiveness when misdeeds by their schools, such as misleading statements about the quality of its educational offerings, caused them to take on the debt. *See, e.g.*, 34 C.F.R. §685.206(e)(2). The borrower-defense program stems from a statute empowering the Department to promulgate "regulations" that "specify" the "acts or omissions

of an institution of higher education a borrower may assert as a defense to repayment." 20 U.S.C. §1087e(h).

When presented with a borrower-defense application, the Department undertakes a fact-finding process in which the school is given an opportunity "to respond and to submit evidence" in its defense. 34 C.F.R. §685.206(e)(10)(i). If the Department verifies the misconduct, it may relieve the borrower of any obligation to pay, and the Department may then recoup the value of the loan from the school directly. *See* §685.308(a). These regulations work on a case-by-case basis.

The settlement disregards the relevant regulations and statutes. It started with a 2019 lawsuit asking the Department to process the backlogged borrower-defense claims. After defending the case for years, the Department abruptly switched gears and started working on a settlement agreement. The settlement agreement gifts the plaintiffs and others generous en masse loan forgiveness and refunds—far more than they could have won in litigation, considering that they had never asked for anything like it. *See* 4 Excerpts of Record 893–94.

The settlement exceeds the Secretary's power. It violates the statute by giving out money to those without "a successful or approved borrower-defense claim," *Sweet*, 121 F.4th at 54 (Collins, J. dissenting), and by employing a discharge power over Direct Loans that the Secretary only has over Federal Family Education Loans,

4

*see* 20 U.S.C. §1082(a)(6). It violates the Federal Rules of Civil Procedure by giving individualized monetary relief to a class eligible for only injunctive or declaratory relief. *See* Fed. R. Civ. Pro. 23(b)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011). It violates the Administrative Procedure Act by changing the procedures for borrower-defense claims without going through notice-and-comment. *Cf. United States v. Carpenter*, 526 F.3d 1237, 1241 (9th Cir. 2008). And it violates due process by harming the intervenor schools' protected interests without proving any process by which they can vindicate their rights. *See Fikre v. FBI*, 35 F.4th 762, 776 (9th Cir. 2022).

In sum, the settlement is but a shortcut to a policy goal, one that the Executive Branch has been unable to achieve in other ways because of limits on its power. *See Career Colleges & Sch. of Texas v. United States Dep't of Educ.*, 98 F.4th 220 (5th Cir. 2024); *Biden*, 600 U.S. at 506.

## II. The settlement agreement and its approval by the judiciary harm the separation of powers.

"Shortcuts in furthering preferred policies" are inadvisable and "always undermine, sometimes permanently, American vertical and horizontal separation of powers." *In re MCP No. 165*, 20 F.4th 264, 269 (6th Cir. 2021) (Sutton, C.J., dissenting from denial of initial hearing *en banc*). The settlement agreement is one such separation-of-powers-damaging shortcut. It gives legislative power to the Executive

Branch. And the judiciary's approval exacerbates the damage to our constitutional structure.

## A.  The settlement agreement gives legislative power to the executive.

Separation of powers is a fundamental aspect of the Constitution's limits on government power. It "disperses the federal power among the three branches—the Legislative, the Executive, and the Judicial—placing both substantive and procedural limitations on each." *Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 272 (1991). The idea is to allow "ambition [to] counteract ambition" by "giving each branch the necessary constitutional means … to resist encroachments of the others." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 501 (2010) (quotation and brackets omitted). When maintained, this interdependence "make[s] it impossible for any element of government to obtain unchecked power." Antonin Scalia, "In Praise of the Humdrum" in *The Essential Scalia: On the Constitution, the Courts, and the Rule of Law* 35 (Sutton & Whelan, eds., 2020). Ultimately, the separation of powers "has as its aim the protection of individual rights and liberties—not merely separation for separation's sake." *Sierra Club v. Trump*, 929 F.3d 670, 704 (9th Cir. 2019).

The Secretary exercises the enforcement power of the Executive Branch. The Constitution vests the "executive Power" in the President. U.S. Const. Art. II, §1.

The executive power includes the power to enforce federal law. *See generally Hamdan v. Rumsfeld*, 548 U.S. 557, 591 (2006) (quotation omitted). "In the framework of our Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952); *accord Medellin v. Texas*, 552 U.S. 491, 526–27 (2008). "And the Constitution is neither silent nor equivocal about who shall make laws which the President is to execute"; the "first section of the first article says that 'All legislative Powers herein granted shall be vested in a Congress of the United States.'" *Youngstown*, 343 U.S. at 587–88 (quoting U.S. Const. Art. I, §1). In short, "the power to make the necessary laws is in Congress; the power to execute in the President." *Medellin*, 552 U.S. at 526 (quoting *Hamdan*, 548 U.S. at 591) (brackets omitted). Good-faith execution of law requires, at bare minimum, "follow[ing] laws regulating the executive branch." Brett M. Kavanaugh*, Our Anchor for 225 Years and Counting: The Enduring Significance of the Precise Text of the Constitution*, 89 Notre Dame L. Rev. 1907, 1911 (2014).

Among the "laws regulating the executive branch," *id.*, are those creating and defining the powers of executive agencies. These agencies "possess only the authority that Congress has provided" them. *NFIB v. Dep't of Lab., OSHA*, 595 U.S. 109, 117 (2022) (per curiam). They "literally" have "no power to act … unless and until

Congress confers power upon" them. *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 315 (2019) (quotation omitted). Along similar lines, even when agencies have the power to act, they must do so through congressionally prescribed means— usually the Administrative Procedure Act. Compliance is often burdensome, but that is by design and improves the decision-making process. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979); *Louis v. U.S. Dep't of Lab.*, 419 F.3d 970, 976–77 (9th Cir. 2005); *MCI Telecomms. Corp. v. FCC*, 57 F.3d 1136, 1141 (D.C. Cir. 1995) (quotation omitted). And, just as the inefficiencies of bicameralism bring a "calming influence" to the legislative process, the Administrative Procedure Act's mandate to proceed cautiously is designed to reduce regulators' susceptibility to "momentary passions." *See* John F. Manning, *Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules*, 96 Colum. L. Rev. 612, 650 n.180 (1996).

Settling a case in a way that thwarts congressionally mandated procedures undermines the Constitution's structural protections. The effect of such strategic surrender is to concentrate power "in the hands of a single branch." *Clinton v. City of New York*, 524 U.S. 417, 450 (1998) (Kennedy, J., concurring). It should be "alien to our concept of law to allow the chief legal officer of the country to violate its laws under the cover of settling litigation." *Exec. Bus. Media, Inc. v. U.S. Dep't of Def.*, 3

F.3d 759, 762 (4th Cir. 1993). Any public official's "authority to settle litigation for its government clients stops at the walls of illegality." *Id.*

This settlement is unlike any proper exercise of executive discretion. At best, it purports to make a substantive regulatory change without abiding the procedural limits that Congress imposed. At worst, it wields the legislative power of rewriting the legal framework, a job entrusted to Congress alone. Neither can fit inside the confines of the executive discretion to determine whether and how to enforce the law in a given case. "There is a clear difference between" executive discretion and legislation-by-settlement. *E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1009 (9th Cir. 2024) (VanDyke, J., dissenting). Ordinarily, States lack standing to force the federal government to "make more arrests" when it has determined not to. *United States v. Texas*, 599 U.S. 670, 674 (2023). But that hardly means that the Executive Branch can use its settlement power "to get rid of a lawfully enacted" statute or regulation "rather than doing so through proper legislative or regulatory channels." *E. Bay Sanctuary Covenant*, 102 F.4th at 1009 (VanDyke, J., dissenting).

By now it is clear that the Executive is using this settlement to accomplish a goal that it could never reach using its statutory powers. Other separation-of-powers threats may come "clad, so to speak, in sheep's clothing," but "this wolf comes as a wolf." *Morrison v. Olson*, 487 U.S. 654, 699 (1988) (Scalia, J., dissenting.).

**B.** **The District Court's approval of the settlement agreement and panel's acquiescence further violate the separation of powers.**

Separation of powers is particularly crucial between the judiciary and the other branches. When the judiciary is independent from the other branches, it "will always be the least dangerous to the political rights of the Constitution." The Federalist No. 78, at 425 (Alexander Hamilton) (Scott, Foresman & Co. ed., 1898). But that is only true "so long as the Judiciary remains truly distinct from both the Legislature and the Executive." *Id.* "[L]iberty can have nothing to fear from the Judiciary alone, but would have every thing to fear from its union with either of the other departments." *Id.* at 425–26.

Separation from the other branches means that the courts can apply "the law as a 'check' on the excesses of both the Legislative and Executive Branches." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 125 (2015) (Thomas, J., concurring). "Article III judges cannot opt out of exercising their check." *Id.* This means that courts, at bare minimum, must not affirmatively cooperate in "an executive effort to extend a law beyond its meaning." *Id.* And when they have lawful authority to invalidate violations of the law, they should do so.

Approving the illegal settlement agreement cooperated in smudging the line between the powers of the branches. "Judicial approval of a settlement agreement places the power and prestige of the court behind the compromise struck by the

parties.  Judicial approval, therefore, may not be obtained for an agreement which is illegal, a product of collusion, or contrary to the public interest."  *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983) (citation omitted); *cf. Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1052 n.16 (9th Cir. 2019) (analyzing settlement on assumption that settlement relief was legal).  Approving the settlement lodged judicial imprimatur upon the Secretary's legal violation, and refusing to adjudicate the merits on appeal compounded the error.

To add irony, the panel majority used a doctrine about judicial restraint—a mainstay of separation of powers—to justify standing idly while the separation of powers was itself at issue.  Prudential standing doctrine is "a body of judicially self-imposed limits on the exercise of federal jurisdiction," which is "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *City of Los Angeles v. Cnty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984) and *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  The idea is to prevent the wrong branch from "deciding questions of broad social import."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985) (quotation omitted).  But the Supreme Court has more recently emphasized that courts have a "virtually unflagging" duty to resolve cases within their jurisdiction.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–26 (2014) (quotation omitted).

Courts, in other words, must "say what the law is" in such cases. *Marbury v. Madison*, 1 Cranch 137, 177 (1803). By using prudential standing to sidestep the merits, the panel used a tool of separation of powers to abdicate its duty to safeguard the separation of powers.

The courts should have exercised their authority, which they rightly had, to safeguard the constitutional limits on the branches' power. The full court should review this case to vindicate the place of the courts and the limits on the Executive Branch.

## CONCLUSION

The Court should grant en banc review.

DAVE YOST
Ohio Attorney General

*/s/ Mathura J. Sridharan*
T. ELLIOT GAISER
Ohio Solicitor General
JANA M. BOSCH
MATHURA J. SRIDHARAN*
Deputy Solicitors General
 *Counsel of Record
30 E. Broad St., 17th Fl.
Columbus, Ohio 43215
614-466-8980
mathura.sridharan@ohioago.gov

*Counsel for Amicus Curiae
 State of Ohio*

## ADDITIONAL COUNSEL

Steve Marshall
Alabama Attorney General

Treg R. Taylor
Alaska Attorney General

Ashley Moody
Florida Attorney General

Christopher M. Carr
Georgia Attorney General

Raúl R. Labrador
Idaho Attorney General

Theodore E. Rokita
Indiana Attorney General

Kris Kobach
Kansas Attorney General

Liz Murrill
Louisiana Attorney General

Lynn Fitch
Mississippi Attorney General

Andrew Bailey
Missouri Attorney General

Austin Knudsen
Montana Attorney General

Michael T. Hilgers
Nebraska Attorney General

Drew H. Wrigley
North Dakota Attorney General

Gentner Drummond
Oklahoma Attorney General

Alan Wilson
South Carolina Attorney General

Marty Jackley
South Dakota Attorney General

Jonathan Skrmetti
Tennessee Attorney General
and Reporter

Ken Paxton
Texas Attorney General

Sean D. Reyes
Utah Attorney General

Patrick Morrisey
West Virginia Attorney General

Bridget Hill
Wyoming Attorney General

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### CERTIFICATE OF COMPLIANCE FOR BRIEFS

**9th Cir. Case Number(s)** <u>23-15049, 23-15050, 23-15051</u>

I am the attorney or self-represented party.

**This brief contains** <u>2,630</u> **words,** excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App.

P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>s/ Mathura J. Sridharan</u>    **Date** <u>December 30, 2024</u>

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2024, the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Mathura J. Sridharan
Mathura J. Sridharan
Ohio Deputy Solicitor General